We'll call our next case United States v. Montano, case number 23-2030. Ms. Edelman, you may proceed when you're ready. Good morning. My name is Violet Edelman, and I represent Allegis Montano. I would like to reserve three minutes of my time for rebuttal. We raised three issues in the briefs, and I would like to begin with the third issue pertaining to the criminal history score calculation. The record in this case could not establish that each of the five consolidated state court cases were worth three criminal history points. The district court's assumption that Mr. Montano served sufficient time on each one was conjecture without basis in fact or law. A defendant has a fundamental due process right to be sentenced based on accurate information, and it is the government's burden to prove that criminal history points should apply. So it's your primary argument on this third issue that the government didn't satisfy its burden by preponderance, correct? Yes. And if that's our understanding of your argument, there's no reason to consider lenity. Is that also a fair understanding? Yes. I think the lenity argument is an alternative. But the primary point is that the government was required to prove that he served enough time on each one, and it didn't offer anything really in support of that. So that wouldn't require applying the rule of lenity. Didn't the district court here do the best that it could with the documents in front of it? I don't think so because all the documents established is that he served, he was sentenced to seven years in custody and 13 years of that total sentence was suspended. But there's no evidence in the state court record at all on how the state court was splitting up that time. It's entirely possible and plausible even that all of the time would have been satisfied by that one that carried 12 years of exposure. And I think without more, the district court was actually required to look at what was necessarily established by the record, which is that he would get three points on one of them. We know that is true and that the others would each be worth one. The district court actually, the logic that it applied doesn't track either because I think she assumed that each one could get 18 months. But if you add that up, that's actually seven and a half years. And he only got seven years in custody. So there's a problem there that sort of betrays the general lack of clarity and confusion. So the logic that she followed did not track for that reason. So the only fair way to approach this is to assume that he served the time on the one case that occupied more than half of the total and that the rest were fully suspended. And that agrees with the guidelines as well because they provide that when you have a fully suspended sentence, it's worth one criminal history point. So what would the mandate be on this issue? We would send this back to the district court to do what precisely on the criminal history? You would remand with instructions to sentence him in criminal history category five because that is the only thing that is necessarily established by the state court record. Yes, sir. There are five cases that incorporate 12 different charges, correct? Yes. And in order to get this reduced from category six to category five, the only way that can happen is if three points are given to only one of the five cases, correct? That is, I think, the most straightforward way to look at it. No, no, no, that's not my question. I'm going to harmless this. The only way for you to get this reduced to category five is if only one of the cases gets three points and the other four get only one. Well, actually, it's a bit technical in the weeds, but if you count them in order, the cases as they are listed in the state court documents, which is what trial counsel suggested, because the total sentence that Mr. Montagna received was 22 years minus one day, and the total exposure, the maximum actually was 22 and a half years. So there are six months there plus a day that have to come off of some sentence. I wondered where that went to, too. And I think, I mean, it's, again, very hard to tell from the state court documents, but if that were applied to the first one that was listed, which was an 18-month maximum, that conviction actually would have gotten less than 13 months, I think, something like 11 months in one day. So that would be two points. And then now we have Amendment 821, so he would have only received one status point. So the math breaks down so that he would be in criminal history category five under that analysis as well, which makes the error. Okay. I didn't quite follow that. Three points can be attributed to more than one of the five cases? No, not going in order, because... I'm not talking about going in order. I'm just saying, looking at, there's five cases listed, and I understand that when they list the individual charges, they're doing it chronologically, starting with the oldest and descending down to the newest. But focusing just on the five cases, because that's where the sentencing occurred. And as I understand it, the only way it can be reduced is if only one of that set of five gets a three count and the remaining four get one count. That's the only way it can be reduced from a six to a five. And you're telling me that's not so... If one of them gets two points, that still results in reducing to five, because that's two plus three, and then the other three get each one. Okay, then half of my suggestion is true. Only one gets three. Yes. Okay, all right. Yes, and I think that... I didn't think about the other, so you could be right on that. Well, it's very hard to tell, and the district court acknowledged that, and kind of the chaos that happened there and has continued on appeal, in terms of everyone kind of suggesting a different method, really betrays the problem, which is that you can't tell, and without knowing more, it's not fair or constitutional to have someone spend longer in prison based on a lack of clarity in the state court record. Do you agree that it would be futile to remand this for the court to reconsider its allocation of points, that it would be futile to do that, because there's no further information they can get? Yes, I think that the record that was before it was exhaustive in terms of trying to figure out what the state court did, and the government didn't offer anything in the district court and doesn't offer anything now to offer anything different. That's why you're suggesting the mandate is very specific. Yes. Does the government make a harmless error argument on the third issue? I wasn't seeing it, but maybe I'm... I don't think the government... So they did not raise it, probably. But doesn't a harmless error in here in this, if you're trying to figure out how to allocate points? Well, it's the government's burden to show harmlessness. Is that right? Yes. Yes, and I think it's... Wait a minute. Do you appear much in state court in your previous life? No, Your Honor. The district court made somewhat disparaging remarks about how the state district court handled the sentencing. Is that correct? Yes. And it did so because the state court didn't do things so that it would accommodate the sentencing procedures in federal court. Correct? I'm not sure why she particularly found the state court judgment to be such a mess, I think is what she said. Is there any evidence in the record that the state court did anything other than looking at this holistically, I see this, there's 22 years in one day, possibly, actually 26 months in one day, and I'm just looking at this holistically, and I think it feels that seven years is about right. Not thinking anything about any specific one of the 12 crimes or any specific one of the five cases. And it didn't have any idea whatsoever. And as a result, it's impossible to divine what that district judge was doing. That's one view, right? Yes. Another view is that if you did a matrices type analysis, and I'm going back some 60 years to my high school mathematics, but if you take these five cases, there are many, many alternatives you could come up with in allocating points, aren't there? Yes. But the district judge said, well, I'm going to look at these as they are listed in the judgment. And there are so many different ways, he didn't say this, but there are so many different ways you could align this. It's logical that you just follow the list down, and once you get a total of seven years, which means two cases, you apply three points to each one of those cases, and that's six. Why is that a wrong approach? In trying to define what the state district court was doing. Well, I think given the lack of clarity and the number of different avenues there are that one could follow in making this conclusion, the only thing that is constitutional is to look at the least necessarily established by the state court records, and there isn't anything in the state court record to suggest that it goes down the lines, particularly with each getting three, since there is that six months, too, that comes off of somewhere. I am no expert in New Mexico state court sentencing, but my review in preparation of the cases from the New Mexico Supreme Court suggests that sometimes the state court does specify the order. It says that these sentences are consecutive and they'll be served this one first and this one, and they didn't do that here. You just said generally they're going to run consecutively to one another. Yes. And so I think that really leaves the district court with no other option but to put him in criminal history category five. Council, we're going to keep you over time. I have a couple of questions we didn't get to yet on the brandishing. What exactly is your challenge here? Are you making a challenge to the district court's factual findings, or are you arguing that here, like in Faro, the district court used an improperly subjective standard? Or are you maybe doing both? I just need some clarification around your argument there. Yes, well, I think that it is both because I think the biggest problem with the evidence presented here is that one of the witnesses said she thought she saw a firearm and the other witness doesn't appear to have seen that. And so there's evidence that directly undermines that subjective perception. So if you look at the totality, the objective facts altogether don't establish that he brandished a dangerous weapon or that that enhancement is appropriate. I mean, I think there's another way to look at it, which is that the evidence, there wasn't enough because all there was was this subjective perception that's undermined by the other witness. Okay, that helps me understand that component. But if we conclude that based on this record in the district court's ruling, short oral ruling, that there was a subjective perception, that's not dispositive under our law, right? That factors into the analysis. But what do we do with the other components of what happened at the scene with the hand in the hoodie and the put your hands up and all of that? Why isn't that totality sufficient? Well, none of this court's cases or the other circuit cases on this enhancement have that type of limited evidence and then also another witness directly undermining what the one witness saw. So I just don't think that's enough to overcome the question, the fact that it's called into question by what CB testified to. It also doesn't quite rise to the level, I think, of many of the other cases where you have a note that says, I have a firearm or I have a box or there's a bomb in this box or something like that. It's very vague and doesn't deliver that kind of threat. Thank you. Thank you. Thank you. Good morning. May it please the court. Jamie Roybal on behalf of the United States. As the court is aware, this appeal stems from a robbery that Mr. Montano conducted with his father. Before the district court there were five issues present and before this court there are three of those issues that are present. So I'd like to start with the enhancement for brandishing or possessing a dangerous weapon, unless the panel would like me to start somewhere else. So I think first, looking at the language of the guidelines and the language of specifically Application Note 2 to the relevant guideline, the example that is given is if a defendant uses their hand wrapped in a towel to create the impression that they have a gun but that they don't actually have a firearm. And so I think that that's an important starting point because the example that's given in the sentencing guidelines of somebody that doesn't have a gun and instead uses their hand is the exact situation that we have in this case. So it's undisputed that Mr. Montano did not have a firearm, but the question is whether or not his use of his hand and his actions at the scene combined with his words were sufficient for the district court to imply that enhancement. And that's actually precisely where my question begins, is that the district court held that the testimony today and the evidence presented shows that the defendant put his hands in the pocket or under his hoodie and he meant that to create the appearance of a weapon. I'm struggling with what supports that conclusion because we don't have anything that suggests that he made a gun-like shape. I didn't see that in the testimony. So could you speak to that? Yes, Your Honor. So what was before the district court was the testimony of the two victims. And when Mr. Montano and his father entered the story, they had bandanas over part of their faces and they yelled at them. What the testimony establishes is that the victims thought that these men were initially customers and they didn't understand that this was a robbery until they yelled a second time, get your hands up and get against the wall. The father then took the victim who was pregnant to a separate room to load up the merchandise. And Mr. Montano, the son, stayed with the second victim in the kind of primary area of the store and she held her hands against the wall. He stayed with her the entire time. She testified and what she did, and it is in the record, is that she put her hands inside of her sweater and made the shape of a gun and she stood up and showed the court and showed the defense attorney that gesture. That gesture isn't described in the testimony. Do you agree? It's not described that that's the gesture she made, that there was a gesture. When I reread the record, it did say I saw you gesture, right, something to that effect. Right, not you gestured in the form of a gun under your hoodie. I agree with Your Honor, yes. So what do we do with that? If the district court made that finding, we assume that she made it based on a gesture that supports the government's interpretation of the evidence? Well, Your Honor, part of the testimony also is that she said she saw his hand under his hoodie, under his sweatshirt. Which would be a harmless thing to do, without war. I think if that was all that we had, then I would agree with you. But what we also had are his words and his actions, right, and the words are spoken in a forceful tone, get against the wall and keep your hands up, and the actions are that he stood next to her, approximately two to three feet away, while the entire robbery was taking place. So he did not leave her side until his father was done collecting the merchandise from the other room. And so I think that based on the Faro standard, the Faro inquiry, the determinative inquiry that this court outlined, is whether a reasonable person, under the circumstances of the robbery, would have regarded the object that the defendant brandished, displayed, or possessed as a dangerous weapon. So I understood Mr. Montano's argument that the district court made this decision based only on the victim's perception, but I don't think that that's what the record shows. It was the victim's perception, along with his actions in standing watch over her, essentially, until the robbery was complete, and then his words of put your hands against the wall and don't move. But it's the victim's perception of what? That's what I'm struggling with. It was very clear from the record that the victim perceived a hand under the hoodie in the shape of a gun. And that's not what the record says. It says a gesture inside your sweater. So I don't know how to read the record in favor of your position on that point. I agree with you. There are other things here, words, tone, et cetera. But as to that, I don't know how we can find, based on this record, that there was a gesture of a hand under a hoodie in the shape of a gun. I understand, Your Honor. And I think that that, you know, the district court's finding was, you know, Elijah just put his hands in the pocket or under his hoodie, and he meant that to create the appearance of a weapon. My understanding of how the district court was able to come to that was the victim herself standing up and showing that gesture inside of her sweater. I admit that the written record before the court doesn't specify that. But that was my understanding of how the district court got that. And we have no video in this case. We don't have video, Your Honor. Both victims testified that the video at the store had gone down that day. You put a lot of reliance on Farrell, right? Yes. In Farrell, wasn't there additional evidence? Didn't the defendant admit that his use of his hand was, I think he said, as if I had a gun? Yes. So they had a little more in Farrell than there is here. They had that statement by, or the admission by the defendant in Farrell, which is something we don't have here. Mr. Mancini invoked his right to remain silent. Didn't that change the case completely? You know, Judge, I don't know that that changes the case because when the Farrell court was outlining the inquiry, it did not, you know, require that a defendant make an admission. It was the, you know, the reasonable person question, right? Whether a reasonable person under the circumstances, based on the actions and the language of the defendant, would have understood that there was a firearm, would have thought that there was a firearm. I would also point the court to the case of United States versus Hall, which was a 2019 decision. That was also a bank robbery where the defendant used a threatening note in that case and said, you know, to give him the money and that nobody would get hurt. And the evidence that the district court had was the teller's statement that the defendant put his hand down his waistband and grabbed something as if it was a firearm. And so, you know, in upholding this enhancement in the Hall case, the district court, there was surveillance video as well that showed him make that gesture. But so it was surveillance video, the big teller's statement and the threatening note. But in the Hall case, the defendant spoke to law enforcement after he was arrested as well. And he told them he robbed the bank, but he did not have a gun. And so I don't think that the admission of a defendant is necessary. I mean, it certainly would be very helpful. I don't think that it's necessary. But even in Hall, you have something different than here. The person with just their hand in the hoodie pocket in Hall,  that there was a motion as if he had a gun, stuck in his pants, right? So what I understood to be present in the Hall case was a gesture that he put his hands down his waistband. I don't know that there was evidence that he actually grabbed anything, but that he put his hand down his waistband as if he was reaching for something. And so here what you have is one victim reporting that Mr. Montano put his hand inside of his sweater. And then again, I admit the record could be more clear, but she gestured as if and pointed with her hand as, you know, what she said she understood. We don't have a record that she pointed. We just don't have it. I understand. And so do you have any suggestions for what we do with that absence? Well, I think, you know, looking at the standard of review before this court, you know, this court has to look at the factual findings, the district court's factual findings for clear error. And to say that there's, you would have to find that there's no factual basis in the record. And so I don't think that we're quite at that stage to say there's no factual basis because even though we didn't, you know, counsel or the court didn't verbalize this, the type of gesture she was making, the district court was able to observe her. And I think that that's within the district court's province to do is make that factual finding based on its observation of the witness, which is in my view, what happened here. Another question I had is when you were responding to Judge Murphy, you know, you suggested that, you know, in hall, there was an admission, which, or there wasn't an admission, but admissions would be nice and helpful. I don't think the issue is admission. It's in our cases, there's like a contemporaneous statement. Hey, I have a gun. Right. So in the cases that recognize that threatening language is demonstrative of the facts that support the enhancement, it's, it's that, it's not a defendant saying later or anything. Right. So we don't have anything like that here, do we? We don't have any language that conveys a threat. What we have, I think primarily as it relates to, you know, and this is a difficult question to answer because Mr. Montano was acting in conjunction with his father. Right. And so the two of them, it was clear that they had planned and executed this robbery together. So what we have is the, and this is in the pre-sentence report, this factual finding was not challenged. The second victim's statement to law enforcement that Mr. Montano's father, Daniel told her, you know, just kind of, when he was taking her to the second room, just kind of do as I'm telling you and nobody's going to get hurt in, you know, implicating that there there is a possibility somebody could get hurt if they don't do what they say. Right. And as to, as to elegious Montano, you know, I think that his actions and standing watch over the victim as, as he had her continue to put her hands against the wall. I think that that is an action that under the Pharaoh inquiry, this court can consider again, combined with his tone, combined with his words and then combined with what the victim reported. She saw with the hands under the hoodie. I think that by a preponderance standard, I absolutely can see the record could be more clear, but I think that by a preponderance standard under the Pharaoh, you know, inquiry that it lays out for us, I think that we meet that burden. You better spend some time with category six or category five. Yeah, sure. Thanks judge. You know, your honor noted that correctly, Mr Montano was sentenced for 13 different state crimes that were a part of five different cases. And those were, I don't think there's any question that those were separate intervening arrests. And so different cases that the state court chose to sentence all at the same time. You know, when we were at the sentencing hearing, the district court had available to it, the documents that this court has, the billable, which were the state court documents and interpreted it in such a manner that the federal district court judge felt that the state district court judge intended that he spends time in custody on each of those cases. Now I'm, I'm not going to stand here and say that that was the clearest part of this case by any means. I absolutely concede that. But I do think that the finding is supported by the language of the state court judgment itself. So the state court judgment says, quote, the convictions shall be served consecutively for all purposes, including any future parole or probation violations for an overall jurisdiction of 22 years minus one day and all but seven years will be suspended. And so I, and I would also note that the state district court in that document assigned each of those five cases, some amount of pre-confinement credit that Mr. Montano received credit for. So I think that it did show, you know, that's towards the end of the state court document. I think it's the last substantive paragraph, but I think that it showed, where he says 223 days pre-sentence confinement. Let me pull it up and I'll look along with you judge. So it's going to be on, um, on page four defendants to receive credit for 223 days, um, based on the following calculations. And then it breaks out each of those five cases and how much pre-confinement credit he got for each of those. And so, you know, I think it would have been ideal and it would have been helpful if the state court judge had said case X gets this amount of time case X gets this amount of time. But what I would point out is that there is nothing in the state court judgment that supports the theory that the defense is trying, was trying to, you know, advance before the district court, which is that, um, the first case gets all of the time and then the rest of the cases get no time. And I will say that based on my experience, you know, we take cases from the state of New Mexico all the time, or with somebody with, with criminal history in the state of New Mexico. And based on my experience, what I can say is that when a state court intends to fully suspend a sentence on or give a defendant zero time on a case, it will typically say that. And so my view was, you know, based on the language of the state court judgment, which was, um, the convictions shall be served consecutively for all purposes, including for purposes of probation and parole, that that was, you know, the state court's way of, of, um, stating that each of the convictions get specific time. Now I think we can disagree on the math and, and I would just. Tell me, what is it about that language? That just because it says it would be served consecutively suggests that there's a specific amount of time for each specific, either conviction or case. I think that. I don't follow. See, one follows the other. I think that if there was, if there was zero time assigned to any of those cases or any of the 13, um, I see, I've just hit red. Can I answer your question? Um, I do think that if there was an intention that there be zero time allotted, um, I don't know that that language of, um, the consecutive language would have been necessary because if there's zero time allotted to something, then to me, it would just be puzzling that that zero time would have to follow consecutive to, to anything else. We could just say there is zero time allotted to this sentence. So my view would be that if. You mean because there's just this, you get seven years, uh, that when you add to that, this consecutive reference that somehow that explains it, that, that each is to get a, a specified. Well, each is to get some time, which is unspecified. Yes. And, and my starting point is the 22 years because that is where the state court started. So 22 years all to be served consecutive. I now suspend 13 years. Um, I, I admit that it's puzzling and that the math is, um, the math is different. Isn't that precisely the problem that if we, if we can't, uh, discern in a more likely than not fashion, that there is only one option for the district court? Um, I think the option would be that we go back and give that another try. I don't know that. On an open record. Um, so that you can sell the government can try again. Yes. What would you do? I mean, I can't, I, you had everything. You're going to subpoena the district, the state court judge. I've been thinking of not, I haven't been thinking about that. I've been thinking about the question. Um, I've been thinking about the question and I think the, the one thing we did not explore was whether there was an audio recording of that, um, state court sentencing hearing. And so that would be if we, you know, had the chance to go back and try it again. That's something that I would look to see if it was available. If it was not, then I think that, you know, we would go back to the district court and say we have nothing further. Um, perhaps you should consider criminal history category. Was the practice in this particular court at that time to have audio versus court reporters? Um, based on my very limited experience with the state of New Mexico's criminal justice system, I do understand that they do audio recordings. Um, and then you can request a transcript of that audio. So it, it, I don't think that, um, I can stand here and say there's absolutely nothing more that might exist. I think there could be something more, but the question is, you know, if you think that we need to go back and give this another try, that would, um, I think that that would be appropriate. Did you take a look at New Mexico law on this? Well, I tried. Okay. You didn't find anything that was helpful to you? You know, the only thing I found that was helpful was some guidance by the New Mexico Department of Corrections. I don't know what role that would play, um, in kind of helping us solve the problem. I, I, I agree that there, um, we are working with a record that is less than clear. And I agree that, um, the math is difficult to understand based on the documents we have available. Right. Now, what about this Department of Corrections? You say that you found something that, that, that might. And when I say helpful, I'm not, I'm saying relevant, helpful to either side. Um, so there's guidance in the Department of Corrections as to kind of how the state of New Mexico calculates good time when somebody is, um, sentenced to multiple things. So I did not think if we go back and do this again about subpoenaing the state court judge, but I did think about perhaps having somebody from the State Department of Corrections identify about how they're able to, um, because they have to receive this state court judgment as well and determine on the back end how much good time somebody gets based on the judgment that they have. Right. So that's my, um, my two ideas are find the state court audio if it exists and then have somebody from the State Department of Corrections explain their guidelines to us when they deal with multiple sentences at the same time. Audio or transcription by a court reporter? Yes. Okay. Well, I have to explore this with you, um, because I was doing this. I was sentencing people when the sentencing guidelines were in effect. I was sentencing as a state court judge and, um, I'm concerned that there is a complete absence of evidence of what was intended here. And part of that is there was no intent. And that is that a state district court judge sentencing a person on five cases looking at him and say, well, I'm going to run these consecutively. These are pretty bad. Uh, but I'm looking at it holistically. And I think considering that, you know, the total of 22 years, six months, one day, or 22 years, one day, uh, looking at it holistically, I think seven years is about right. Uh, and in doing that, you're not thinking about what might happen in a federal court. And your job is not to accommodate the federal sentencing guidelines as a state judge. Uh, and you, you don't have any intent to allocate anything to any particular case. Why is that? And that indicates there is no evidence and there will be no evidence. Why is that a wrong way to look at this? I don't think it is. I think there is a, there is a. Well, that means a reversal on, uh, because there's no evidence. Correct. I'm not going to tell you that's wrong. I think that's, that's one way to view it. Um, you know, and. On this closed record. On what we have right now. Yes. And so if that means we go back and Mr. Montano is resentenced in criminal history category five, then, um, then that's what happens. Thank you. You, you, you were very helpful. Thank you. Uh, Ms. Edelman, two minutes for you. Um, I think that this court should describe the case on the record before it. Um, the government had ample opportunity, uh, to prove the sentences imposed for each conviction and we provided the district court with the state court records. Um, and the most that can be gleaned from those records is that he belongs in criminal history category five. Um, the government. Did you comb that record for either a transcription by a court reporter or a video recording? Um, I know that's not part of the record. I'm not, I, I don't think so since that's not in the record. Um, I don't think that the trial attorney. Um, and it is the government's burden and the government also has not offered anything for the proposition that, um, if sentences are fully suspended, then they, you know, that the court would specify that. Um, and it, you know, and there's certainly, it does have to offer evidence that they each would be worth three points. That is the government's burden. The pre-confinement credit doesn't establish anything because that could have been the time that he served in custody between the various offenses. So, um, for those reasons, we ask that this court reverse and, um, remand to the district court with instructions to sentence him in category five. Thank you. Thank you. Thank you for your very helpful arguments. The case will be submitted.